IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CPG INTERNATIONAL LLC,** : | No. 3:15cv1045 |
| Plaintiff : | |
| : | (Judge Munley) |
| v. : | |
| : | |
| **SHELTER PRODUCTS, INC.** : | |
| Defendant : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court is Plaintiff CPG International LLC's (hereinafter "CPG") motion for partial summary judgment on Defendant Shelter Products, Inc.'s (hereinafter "Shelter") breach of contract counterclaim. (Doc. 37). For the reasons that follow, the court will deny CPG's motion.

**Background**

This case arises from a disputed oral contract between Shelter and CPG.[1] CPG manufacturers highly engineered building materials designed to replace wood, metal, and other traditional materials in various building applications.  (Doc. 39, CPG's Statement of Undisputed Material Facts

---

[1] The commercial dealings underlying this action occurred between Shelter and TimberTech, formerly an Ohio corporation. (Doc. 39, CPG's Statement of Undisputed Material Facts ¶ 2). TimberTech merged into CPG on December 31, 2014. (Doc. 1-2, Certificate of Merger). As such, CPG bring this action as TimberTech's successor in interest.

(hereinafter "SOF") ¶ 1).[2]  Shelter is a wholesale building supply distributor servicing both retail building centers and the manufactured housing industry in Minnesota, parts of North Dakota, South Dakota, Iowa, and Wisconsin.  (SOF ¶ 3).  Prior to its merger into CPG, TimberTech and Shelter engaged in business dealings over a prolonged period of time, wherein Shelter purchased various TimberTech products to sell within its sales territory.  (SOF ¶ 4).

CPG, in anticipation of its merger with TimberTech, began narrowing its field of distributors in 2013.[3]  (SOF ¶ 5).  On September 10, 2013, Shelter's CEO Duane Lambrecht (hereinafter "Lambrecht"), called TimberTech's CEO Stuart Kemper (hereinafter "Kemper").[4]  Lambrecht and Kemper discussed Shelter's status as a TimberTech distributor, including various scenarios if CPG cancelled Shelter's distribution.  (SOF

---

[2] We cite to CPG's SOF (Doc. 39) for statements which Shelter generally agrees with in its response (Doc. 53).

[3] CPG based its decision on which distributors would survive and which distributors would lose the TimberTech product line based on: coverage area, sales expertise, number of people on the wholesaler's sales force, financial information, wholesaler's physical size, and ability to manage two product lines.  (SOF ¶ 5).

[4] Stuart Kemper is no longer an employee of TimberTech/CPG.  (SOF ¶ 8).  According to CPG, Kemper "left the company at the end of May 2014."  (Id.)

¶¶ 8-9, 19).  The parties dispute whether, in the event CPG cancelled Shelter's TimberTech distributorship, CPG agreed to repurchase Shelter's TimberTech inventory or move the inventory to a surviving distributor–an issue discussed in detail below.

On October 10, 2013, TimberTech cancelled Shelter's TimberTech distribution (SOF ¶ 11), and subsequently initiated the present action on May 29, 2015 to collect an alleged unpaid balance of $96,360.95 from Shelter (Doc. 1, Compl.).  CPG's four-count complaint avers the following Pennsylvania state law claims: Count I, breach of contract; Count II-Account Stated; Count III-Unjust Enrichment; and Count IV-Quantum Meruit.  (Id. ¶¶ 16-40).

On September 4, 2015, Shelter filed an amended answer and counterclaim asserting a Pennsylvania state law breach of contract claim against CPG.  (Doc. 17, Am. Answer and Countercl. ¶¶ 1-11).  After a period of discovery, CPG filed a motion for partial summary judgment on Shelter's state law breach of contract claim.  (Doc. 37, Mot. for Summ. J.).  The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. CPG is a Delaware limited liability company with its principal place of business in Pennsylvania. (Doc. 1, Compl. ¶ 2). Shelter is a Minnesota Corporation with its principal place of business in Minnesota. (Id. ¶ 3). Additionally, the amount in controversy exceeds $75,000. Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"); 28 U.S.C. § 1441 (stating that a defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing F<small>ED</small>. R. C<small>IV</small>. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the nonmoving party will bear the burden of proof at trial, the party moving

for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  <u>Id.</u> at 324.

**Discussion**

CPG's motion for partial summary judgment raises the following two issues: 1) the Pennsylvania Uniform Commercial Code's statute of frauds precludes Shelter's breach of contract claim; and 2) Shelter's breach of contract claim fails on the merits.  The court will address these issues *in seriatim*.

**I.  Statute of frauds**

CPG first seeks summary judgment on Shelter's breach of contract claim, contending the undisputed record establishes that the oral contract to repurchase Shelter's TimberTech inventory is a sale of goods, and therefore, violates the Pennsylvania Uniform Commercial Code's

(hereinafter "U.C.C.") statute of frauds because no writing memorializing this agreement exists. Shelter argues that its oral contract with CPG was not for the sale of goods. Rather, the oral contract required CPG to provide specific services to assist Shelter in eliminating its TimberTech inventory. Thus, according to Shelter, the statute of frauds fails to preclude its oral contract claim.

The Pennsylvania U.C.C.'s statute of frauds provides that a contract for the sale of goods of $500 or more is not enforceable unless it is in writing. Brisbin v. Superior Valve Co., 398 F.3d 279, 297 (3d Cir. 2005) (citing 13 PA. CONS. STAT. ANN. § 2201(a) ("[A] contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . .")). Where, as here, the alleged contract for a sale of goods occurs between merchants, the statute of frauds' writing requirement is satisfied "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of [section 2201(a)] against such party unless written notice of objection to

its contents is given within ten days after it is received." 13 PA. CONS. STAT. ANN. § 2201(b).

Regarding the general interpretation of the statute of frauds, the Third Circuit Court of Appeals has noted that "the statute of frauds has been frequently criticized as a means for creating rather than preventing fraud." Advent Sys. Ltd. v. Unisys Corp., 925 F.2d 670, 677 (3d Cir. 1991) (citing Harry Rubin & Sons, Inc. v. Consol. Pipe Co. of Am., 153 A.2d 472, 476 (Pa. 1959), overruled on other grounds by AM/PM Franchise Ass'n v. Atl. Richfield Co., 584 A.2d 915, 926 (Pa. 1990)). The U.C.C.'s rules of construction also state that the language "must be liberally construed and applied to promote its underlying purposes and policies, which are: (1) to simplify, clarify and modernize the law governing transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions." 13 PA. CONS. STAT. ANN. § 1103(a). Finally, the U.C.C. seeks to promote flexibility in providing "machinery for expansion of commercial practices." 13 PA. CONS. STAT. ANN. § 1103 cmt. 1. With these legal precepts in mind, we look to the realities of the arrangement between the parties.

As previously stated, CPG claims Pennsylvania's U.C.C. statute of frauds precludes enforcement of any alleged oral agreement to repurchase Shelter's TimberTech inventory.  CPG argues plaintiff has presented no evidence establishing the existence of any writing pertaining to CPG repurchasing Shelter's TimberTech inventory.  Specifically, Shelter's CEO Duane Lambrecht (hereinafter "Lambrecht"), testified that CPG never promised to repurchase Shelter's TimberTech inventory. (Doc. 40, Ex. O, Lambrecht Dep. at 40-41).[5]  Moreover, Lambrecht never confirmed with CPG in writing that CPG would repurchase its TimberTech inventory.  (Id.)  Rather, according to CPG, the first written reference to an agreement to repurchase Shelter's TimberTech inventory appears in Shelter's Counterclaim.  (SOF") ¶¶ 16-17).  Thus, according to CPG, the statute of frauds precludes any agreement to repurchase Shelter's TimberTech inventory because no writing exists.

As such, the burden shifts to Shelter, which must go beyond its pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating that genuine

---

[5]  Page numbers in citations to depositions refer to the page number on the deposition itself, not the court's electronic filing page number.

issues of material fact exist regarding whether Pennsylvania's statute of frauds precludes its oral agreement with CPG.  <u>Celotex</u> at 324.

Shelter argues Pennsylvania's statute of frauds fails to apply because its oral contract required CPG to provide services, not necessarily repurchase its TimberTech inventory.  Shelter claims CPG did not merely agree to repurchase its TimberTech inventory.  Rather, CPG agreed to provide services to eliminate Shelter's TimberTech inventory, including assistance with moving the inventory to a surviving distributor.  Accordingly, the statute of frauds is inapplicable because the oral agreement required CPG to provide services, not merely repurchase shelter's TimberTech inventory.

To support its argument that CPG agreed to provide services, not merely repurchase its TimberTech stock, Shelter notes that CPG agreed to transfer its TimberTech inventory to another distributor.  (Doc. 53, Shelter's response to CPG's SOF & Shelter's Counter-Statement of Undisputed Material Facts (hereinafter "Shelter SOF") ¶¶ 10(o)-10(t), 18(a)-18(m), 20, 22).  Specifically, on September 10, 2013, a month before CPG cancelled Shelter's distributorship, Lambrecht and TimberTech's CEO Stuart Kemper (hereinafter "Kemper") spoke about the

10

distributorship. (Shelter SOF ¶ 10(k)). During this conversation, Kemper and Lambrecht addressed the logistics of moving Shelter's TimberTech inventory if CPG decided to cancel its distributorship. (Id.) Kemper explained that if Shelter did not continue on as a TimberTech distributor, CPG, as they did for their closed distributors in the Northeast, CPG would help move Shelter's TimberTech inventory to another surviving distributors. (Shelter SOF ¶¶ 10(o), 10(p)). In short, Kemper would "make sure that when all this gets done that [Shelter] will be whole." (Shelter SOF ¶ 22).

Two weeks before CPG cancelled Shelter's distributorship, CPG met with Shelter at Shelter's offices in New Ulm, Minnesota on September 26, 2013. (Shelter SOF ¶ 10(u)). During this meeting, the parties discussed Shelter's status as a remaining distributor. (Id.) CPG indicated that Shelter <u>would remain</u> as a TimberTech distributor, which further induced Shelter to keep buying and selling TimberTech. (Shelter SOF ¶ 10(v)). The parties also discussed TimberTech product changes. (Shelter SOF ¶ 10(w)). CPG represented that TimberTech would remain a good stable product and would not become stale or obsolete. (Id.) Based on CPG's representations on September 10, 2013, and September 26, 2013, Shelter

11

continued to purchase TimberTech inventory.  (Shelter SOF ¶ 10(x)).  Specifically, Shelter ordered additional TimberTech inventory on September 20, 2013, and October 4, 2013.  (Shelter SOF ¶ 10(y)).

On October 10, 2013, however, CPG advised Shelter that it had been dropped as a distributor.  (Shelter SOF ¶ 18(b)).  Shelter immediately raised the issue of its TimberTech inventory, including the inventory it purchased less than a week prior on October 4, 2013.  (Shelter SOF ¶ 18(c)).  CPG advised Shelter that CPG would get their people working on it.  (Id.)  CPG, however, did nothing to facilitate the transfer of Shelter's TimberTech inventory to a surviving distributor.  (Shelter SOF ¶¶ 18(d) - 18(m)).  To date, Shelter still possesses approximately $139,000 of TimberTech inventory.  (Shelter SOF ¶ 29(m)).

Viewing Shelter's credible evidence in the light most favorable to it, a reasonable juror could conclude that CPG agreed to assist Shelter with moving its TimberTech inventory to a surviving distributor.  That is, the agreement at issue is for <u>services</u>, not for the sale of goods.  Thus, Pennsylvania's statute of frauds fails to preclude the parties' oral agreement, and the court will deny CPG's motion for summary judgment on this issue.

**II. Shelter's breach of contract claim**

Having determined that Pennsylvania's statute of frauds fails to preclude Shelter's asserted oral agreement with CPG, the court next addresses whether a valid oral contract existed between the parties pertaining to CPG assisting Shelter in the elimination of its TimberTech inventory.  Under Pennsylvania law, parties asserting claims for breach of contract must allege the following three elements to adequately state a claim: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Regarding the first element, to prove the existence of an oral contract, Shelter must establish that: "(1) both parties manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement were sufficiently definite to be specifically enforced; and (3) there was mutuality of consideration.  York Excavating Co., Inc. v. Employers Ins. of Wausau, 834 F. Supp. 733, 740 (M.D. Pa. 1993) (citation omitted) ;see also In re Estate of Hall, 731 A.2d 617, 621 (Pa.

Super. Ct. 1999) (same).  Pennsylvania requires courts determining the existence of an oral contract to assess the parties' conduct <u>in light of the surrounding circumstances</u> to determine the existence of an oral contract, including its terms.  <u>Fenestra, Inc. v. John McShain, Inc.</u>, 248 A.2d 835, 836-37 (Pa. 1969) (emphasis added); <u>Johnston the Florist, Inc. v. TEDCO Const. Corp.</u>, 657 A.2d 511, 516 (Pa. Super. Ct. 1995) (citation omitted). The party asserting the existence of an oral contract must establish its terms are "clear and precise."  <u>Edmondson v. Zetusky</u>, 674 A.2d 760, 764 (Pa. Commw. Ct. 1996); <u>Orchard v. Covelli</u>, 590 F. Supp. 1548, 1556 (W.D. Pa. 1984).[6]

Moreover, when the existence of an oral contract is disputed, the Pennsylvania Supreme Court has established a three-stage inquiry: "First, what were the terms of the contract; second, what was the understanding of the parties as expressed by those terms; third, what was the legal effect

---

[6] CPG contends that "the existence of an oral contract must be established by 'clear and precise' evidence." (Doc. 44, Am. Br. in Supp. Mot for Summ J. at 8).  CPG states the correct evidentiary burden if the oral contract modifies or changes or cancels a prior written contract. <u>Pellegrene v. Luther</u>, 169 A,2d 298, 300 (Pa. 1961) (citations omitted). Pennsylvania law, however, provides a plaintiff asserting the existence of a valid oral contract must, in the absence of any writing, establish the oral contract's terms are clear and precise by a preponderance of the evidence.  <u>Edmondson</u>, 674 A.2d at 764; <u>Orchard</u>, 590 F. Supp. at 1556.

of the agreement as thus determined and interpreted." McCormack v. Jermyn, 40 A.2d 477, 479 (Pa. 1945). Stage one and two are for the jury as questions of fact. Id. Stage three is for the court as a matter of law. Id.

This process ensures that "the meaning of words used in conversation, and what the parties intended to express by them, is exclusively for the jury to determine." Id. (quoting Brubaker v. Okeson, 36 Pa. 519 (Pa. 1860); see also Prime Bldg. Corp. v. Itron, Inc., 22 F. Supp. 2d 440, 444 (E.D. Pa. 1998) ("[I]n the case of a disputed oral contract, what was said and done by the parties, as well as what was intended by what was said and done by the parties, are questions of fact to be resolved by the trier of fact . . . .") (quoting Johnston the Florist, Inc., 657 A.2d at 516).

In the instant matter, myriad issues of material fact preclude summary judgment regarding whether CPG agreed to eliminate Shelter's TimberTech inventory. As previously explained, CPG claims it never agreed to move Shelter's TimberTech inventory to a surviving distributor. Specifically, Shelter's CEO testified that CPG never promised to repurchase Shelter's TimberTech inventory. (Doc. 40, Ex. O, Lambrecht

Dep. at 40-41). Shelter argues the exact opposite–that is, CPG agreed to facilitate the transfer of Shelter's TimberTech inventory to another distributor. (Shelter's SOF ¶¶ 10(o)-10(t), 18(a)-18(m), 20, 22).

As such, it is apparent that summary judgment is inappropriate because the jury will be required to weigh the respective testimony and assign credibility. Doe v. Luzerne Cty., 660 F.3d 169, 175 (3d Cir. 2011) (noting that at summary judgment "[t]he court may not . . . weigh the evidence or make credibility determinations because these tasks are left for the fact finder."); Boyle v. Cty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (stating that trial courts "may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."); see also McCormack, 40 A.2d at 479 (noting that what were the terms of the alleged oral contract and what was the understanding of the parties expressed by these terms are questions of fact for the jury.).

Stated differently, Pennsylvania law requires the fact-finder to ascertain the meaning and existence of an oral contract in light of the surrounding circumstances. Fenestra, 248 A.2d at 836-37; Johnston the Florist, 657 A.2d at 516 (citation omitted). Here, the jury must determine these issues in light of CPG and Shelter's seventeen-year business

relationship.  To make credibility determinations and preemptively adjudicate the existence of the alleged oral contract in the absence of the parties extensive business relationship, as CPG would have the court do, may reward profit and expedience over relationships and people.  Pennsylvania law precludes such analysis.  Instead, the jury must determine the terms of the oral agreement and the parties' understanding of those terms.

Viewing the evidence in Shelter's favor, genuine issues of fact exist regarding whether the parties entered into an oral contract pertaining to CPG eliminating Shelter's TimberTech inventory.  Thus, the court will deny CPG's motion for partial summary judgement on Shelter's breach of contract claim.

**Conclusion**

Based upon the above reasoning, the court will deny CPG's motion for partial summary judgement.  An appropriate order follows.

Date:  02/03/2017           s/ James M. Munley
                            **JUDGE JAMES M. MUNLEY**
                            **United States District Court**